## AS TO TAXABILITY OF RAILROAD PROPERTY BEING IMPROVED BY CITY FOR USE OF A LESSEE.

Court of Appeals for Hamilton County.

### THE TRUSTEES OF THE CINCINNATI SOUTHERN RAILWAY V. CHARLES E. ROTH ET AL.

Decided, November 29, 1913.

*Taxation—Property Acquired by a Municipality for Use of Its Own Railway Not Taxable While Being Improved for Railway Use—Section 5356.*

Property acquired by the city of Cincinnati for a viaduct or elevated track and additional terminals for the Cincinnati Southern Railway, owned by said city and operated by a lessee, which property so acquired is being improved by the city for said purpose and when completed is to be turned over to said lessee, is property which is being used in the exercise of a municipal function and while so held by the city is exempt from taxation.

*W. T. Porter* and *John R. Sayler,* for plaintiff in error.

*Thomas L. Pogue,* Prosecuting Attorney, *John V. Campbell* and *Charles A. Groom,* Assistant Prosecuting Attorneys, contra.

JONES, O. B., J.; SWING, J., and JONES, E. H., J., concur.

Under an act of the General Assembly found in 93 Ohio Laws, page 637, supplementary to the act under which the Cincinnati Southern Railway was constructed (66 O. L., 80), bonds have been issued—approved by a vote of the people—and with the proceeds the trustees of said railway acting on behalf of the city of Cincinnati have acquired certain land for the purpose and have partially constructed thereon a viaduct extending from Eighth and McLean avenue to Third and Front streets in said city. This viaduct is not yet completed, but has been and will be held by said trustees who are engaged in its construction, and when so completed it will become a part of the Cincinnati Southern Railway, and will then be transferred to the lessee company operating that railway and will be used in connection with it and its terminals.

The question to be here determined is whether this uncompleted viaduct and the land on which is stands should be now listed for taxation, or whether as public property used exclusively for public purposes it is not taxable.

The general rule as to taxation of the property of municipal corporations is thus stated in 37 Cyc., 874-5:

"While in the absence of constitutional prohibition, a state may tax the property of its municipal corporations, or a municipality having general powers of taxation may tax its own property, an intention to tax such property of a municipality as is devoted to public or governmental purposes will not be implied, but on the contrary such property will be held to be exempt unless an intention to include it is clearly manifested. Lands, buildings and other property owned by municipal corporations and appropriated to public uses are but the means and instrumentalities used for public purposes, and consequently they are exempt from taxation, either by express constitutional or statutory provision, or else by necessary implication. This rule applies not only to counties and incorporated cities, incorporated towns and incorporated villages, but also to such strictly public and governmental bodies as sanitary or levee districts, directors of the poor and reclamation districts."

In *Van Brocklin* v. *State of Tennessee,* 117 U. S., 151, Justice Gray in the opinion of the court at page 173, says:

"General tax acts of a state are never without the clearest words, held to include its own property, or that of its municipal corporations, although not in terms exempted from taxation." (Citing cases.)  "The reasons for this have been well stated in the cases in Massachusetts and New Jersey.   Mr. Justice Devens, delivering the opinion of the Supreme Judicial Court of Massachusetts, said: 'The property of this commonwealth is exempt from taxation because, as the sovereign power it receives the taxation through its officers or through the municipalities it creates, that it may from the means thus furnished discharge the duties and pay the expenses of government.   Its property constitutes one of the instrumentalities by which it performs its functions' (116 Mass., 194).   And Mr. Justice Depue, delivering the opinion of the Court of Errors of New Jersey, said: 'The immunity of the property of the state, and of its political subdivisions, from taxation, does not result from a want of power in the Legislature to subject such property to taxation.   The state may, if it sees fit, subject its property and the property

owned by its municipal divisions, to taxation, in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities. Such property is therefore by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it.' "

One of the recent cases upon the question of taxing public property is that of *Foster* v. *City of Duluth*, 140 N. W. Rep., 129. The city had purchased property for an incinerator plant, or crematory for the disposal of garbage, and same was constructed thereon and used by the city. The syllabus of the case is as follows:

"1. The property of the state and of its political subdivisions, arms and agencies, such as cities within its borders, when used for exclusively public purposes, is not subject to taxation, or to proceedings for the assessment of taxes, or for their collection by judgment and sale.

"2. Where real property, acquired by the state, or a city for exclusively public purposes, is, when so acquired, subject to a lien for unpaid taxes, all proceedings taken to enforce such lien, after the property is so acquired for public purposes, are void."

The opinion of the court by Justice Bunn is especially strong, and holds that after its purchase by the city the property was devoted to public uses and became public property and was not thereafter subject to taxation.

An instructive case as to the power of a municipality to aid in the construction of a railway, and the taxability of the interest paid to the city by the railroad company on the bonds issued for such aid, is found in *United States* v. *B. & O. R. R. Co.*, 17 Wall., 322.

As said by Shauck, J., in the opinion of the court in *Cincinnati* v. *Lewis*, 66 O. S., at page 55:

"The policy of this state has its foundation in Section 2 of Article XII of the Constitution, which describes the property

which shall be taxed as well as that which may, by general laws, be exempted from taxation: 'Laws shall be passed taxing by uniform rule  *  *  *  all real estate and personal property; but  *  *  *  public property used exclusively for any public purpose,  *  *  *  may by general laws be exempted from taxation.' That the public ownership of property was not alone thought sufficient to exempt it from taxation is made obvious by the requirement that an exclusive use for a public purpose shall coincide with such ownership.''

In pursuance of the authority contained in Article XII, Section 2, general laws have been passed exempting from taxation the different classes of property enumerated in said section. Such exemptions are set out in the General Code, Sections 5349 to 5365-1 inclusive. The section claimed applicable to the case at bar is General Code, 5356:

''Market houses, public squares or *other public grounds* of a city, village or township, houses or halls *used exclusively for public purposes or erected by taxation for such purposes,* notwithstanding that parts thereof may be lawfully leased, shall be exempt from taxation.''

In the Lewis case above cited (66 O. S., 56), the property under consideration was a farm known as the Markley farm which had been purchased by the city for the purpose of locating thereon a reservoir and using it in connection with the city water works, but this plan had been abandoned, other lands acquired, and the reservoirs located elsewhere, and this farm was then rented and used for farming purposes. The court held that it was taxable, not being used in the exercise of a municipal function.

So, in *Cincinnati* v. *Hynicka, Treas.,* 9 N.P.(N.S.), 273, affirmed without report in Supreme Court, 84 O. S., 446, where wharf property and market place property had been leased to coal companies and railroads and was used entirely for private purposes, it was held to be taxable.

In the case of *Zumstein, County Treasurer,* v. *Coal & Mining Co.,* 54 O. S., 264, certain wharf property belonging to the city of Cincinnati had been leased for a period longer than fourteen years. Under Revised Statutes, 2733 (now General Code, 5330)

the interest of the lessee was held to be taxable; but the city's interest as lessor was distinguished from that of the lessee and was held not to be taxable. At page 271 in the opinion Shauck, J., said:

"It is not disputed that if the lands had not been leased they would be exempt under the terms of the 8th subdivision of Section 2732, and it was held that in order to make such lands taxable the lease must be for a term longer than fourteen years."

The question of the power of a municipality to levy taxes, and what constitutes a public purpose or a municipal function, is ably discussed by Dickman, J., in the opinion in the case of *State* v. *City of Toledo*, 48 O. S., 112, in which the court held:

"The supplying of municipal corporations and their citizens with such gas is a public use for purposes for which the taxing power may be constitutionally exercised."

The question of whether the property owned by the city of Toledo, and used for securing natural gas lying outside of the city itself, was taxable or not, was considered by the court in *Toledo* v. *Hosler, Treas.*, 54 O. S., 418, and the court held that the gas wells, pipe lines, pumping stations and machinery owned by the municipal corporation was public property used exclusively for a public purpose, and was exempt from taxation.

What constitutes a city purpose, or a municipal or public function, as distinguished from private ownership that may sometimes exist in a municipal corporation, has been the subject of frequent discussions by the courts. Different views have been held upon the subjects. The matter is well stated in the opinion of Judge Donahue in the recent case of *State, ex rel Toledo*, v. *Lynch, Auditor*, to be reported in 88 O. S.:

"I do not believe that governmental purposes include only the protection of life, liberty and property. On the contrary, I am firmly of the opinion that one of the most important duties of the state is to promote the health, convenience, comfort and welfare of its citizens and advance the standard of citizenship in every legitimate way. But I do not believe it is within the

purview of municipal government to invade the sphere of purely private enterprise wholly disconnected and divorced from public needs or public purposes. It is difficult, perhaps almost impossible, to prescribe a limit where governmental functions end and private enterprise begins. In the last quarter of a century our views on this subject have so changed that a limit fixed along the line of prevailing opinion on that subject at that time would seem absurd now, and so it may be a quarter of a century hence.

"As an index of what has been generally understood to be comprehended in the term 'governmental powers,' it is interesting to note that the General Assembly of the state has heretofore conferred upon municipalities by statute the power to own and operate municipal lighting, power and heating plants; to provide for water supply; public grounds, parks and recreation centers; to hold property for charitable purposes; to establish municipal lodging houses; public baths and bath houses; to prevent the sale and distribution of vicious literature; to provide public libraries and reading rooms, to purchase books, papers, maps and manuscripts therefor, and to receive gifts and bequests of money for that purpose; and to maintain and regulate public band concerts. In addition to this, authority has been granted to municipalities to construct railroads; also to fill and improve lands for terminal facilities; to empower municipalities to erect machine shops and issue bonds to pay for them; also to construct glass works.

"It is true that statutes authorizing municipalities to build railways have been held unconstitutional (*P., F. W. & C. Ry. Co.* v. *Martin,* 53 Ohio St., 386), but for the reason only that this legislation offended against Section 1 of Article XIII of the Constitution which provides that 'The General Assembly shall pass no special act conferring corporate powers.'

"In the case of *Walker* v. *City of Cincinnati,* 21 Ohio St., 14, an act authorizing cities of the first class having a population exceeding 150,000 inhabitants to construct a railway, issue bonds for such purpose and levy a tax to pay such bonds, was held to be constitutional. However, the particular thing to which I desire to call attention is the pertinent fact that it was not even suggested in these cases, much less decided by the court, that the authority attempted to be conferred by these statutes did not come within the scope of governmental purposes."

As is stated above in Judge Donahue's recent opinion, the building and operation of the Cincinnati Southern Railroad was declared by the Supreme Court in *Walker* v. *City,* 21 O. S., 14, to be within the governmental scope of the powers of the

city of Cincinnati. There was considerable doubt as to the constitutionality of the original law for the construction of the Southern Railroad, and the decision in the Walker case, 21 O. S., 14, was distinguished by the same court in *Taylor* v. *Com'rs Ross Co.,* 23 O. S., 22, in which case the right was denied to county commissioners and township trustees to embark in the building of railroads; but however the question might be considered if it were presented afresh to the Supreme Court, the decision in the Walker case has become *stare decisis,* and our Supreme Court has so regarded it in all of the supplementary legislation that has since been held, and which has been repeatedly sustained by the courts. *Cincinnati* v. *Taft,* 63 O. S., 141; *Thoms* v. *Greenwood,* 7 Am. L. Rec., 320, 6 Dec. Rep'r, 639; *Cincinnati* v. *Ferguson,* 12 O. D., 439 (affi'd 66 O. S., 658); *Cincinnati* v. *Trustees,* 1 N.P.(N.S.), 361 (affi'd 70 O. S., 476).

Property therefore acquired for the extension and terminals of said railway, held by the city through the trustees of the railway, not yet turned over to the lessees, must be likewise held by the court to be used in the exercise of a municipal function, and therefore not taxable.

Judgment reversed, and injunction allowed.