Columbus & Southern Ohio Electric Co., Appellee, *v.* Porterfield, Tax Commr., Appellee; City of Columbus, Appellant.

(No. 74AP-245—Decided October 8, 1974.)

*Messrs Porter, Stanley, Platt & Arthur, Mr. Allen E. Roth*, of counsel, for appellee, Columbus & Southern Ohio Electric Co.

*Mr. William J. Brown*, Attorney General, and *Ms. Maryann B. Gall*, for appellee, G. W. Porterfield.

*Mr. James J. Hughes, Jr.*, city attorney, *Mr. Robert A. Bell, Mr. John L. Francis* and *Mr. William H. Brooks*, for appellant, city of Columbus.

Troop, P. J. This appeal is from a "Decision and Journal Entry" filed April 30, 1974, in the Court of Common Pleas of Franklin County, in which the court held that the plaintiff, The Columbus and Southern Ohio Electric Company, was entitled to a declaratory judgment in its favor, against defendant city of Columbus, nothing having been ordered by the court with respect to the other defendant, the Tax Commissioner of Ohio. The court "ordered, adjudged and decreed" the following:

"(1) the gross receipts from the sale of electric ener-

gy by Plaintiff to Defendant City of Columbus are subject to the Ohio Public Utility Tax pursuant to Revised Code Chapter 5727, and

"(2) that section 4, paragraph 13 of the contract between the parties does not create in the City of Columbus a right to deduct from its total monthly billing an amount equal to the excise tax."

It is from this judgment that this appeal is taken. Three assignments of error are presently before this court as offered in support of the appeal, permission having been granted the defendant, the appellant herein, to add to and adjust the two assignments of error originally filed. These will be noted in the course of this discussion. The plaintiff will hereafter be referred to as the Company and the defendants as the Tax Commissioner and the City.

The Company filed a "petition for declaratory judgment" in which the prayer requested a judgment:

"(1) interpreting Chapter 5727, Ohio Revised Code, to determine whether the gross receipts from the sale of electrical energy by the Plaintiff to Defendant, City of Columbus, under said contract is subject to, or exempt from, the Ohio Public Utility Tax;

"(2) to declare the rights and duties of the Plaintiff and the Defendant, City of Columbus, under Section 4, paragraph 13 of the aforementioned contract."

R. C. Chapter 5727 is titled "Public Utilities." The contract between the Company and the City, as stipulated, reads in part as follows:

"To the extent that the Ohio Public Utility Excise Tax provided for in Chapter 5727, Revised Code of Ohio, is not applicable to power sold to the City of Columbus, the total monthly billing calculated on the basis of contractors rate schedules shall be reduced by 3% or the rate of such tax if other than 3%."

The case was tried to the court on a stipulation of facts. All of the stipulations are pertinent but the nub of the issue presented to this court is found in stipulation numbered 6, which reads, as follows:

"On February 13, 1969, the City informed the Com-

pany by letter that in the opinion of the City Attorney, Chapter 5727 of the Revised Code of Ohio does not apply to the Contract. The City further informed the Company in this letter that it was reducing the amount of the first month's bill by 3% and processing the lowered amount for payment."

During the term of the contract the City has regularly deducted an amount equal to 3% of the sum invoiced by the Company to the City and remitted the difference.

It is further stipulated that on May 22, 1969, the state department of taxation informed the City as follows:

"All sales made by a Public Utility are taxable except for sales to Federal Government, interstate sales and sales for resale by another public utility required to file a return under Sec. 5727.31 of the Revised Code.

"Since the City of Columbus does not file a return with this Office, the Columbus and Southern Ohio Electric Company must report all sales made to Columbus."

There is no dispute as to the facts, all of those basic to this review having been stipulated. The question presented here is a question of law involving named statutes which, not being readily reconciled, give rise to a conflict in their application and interpretation. The assignments of error offered by the City center about R. C. 5727.05, which is interpreted by the City in such a way as to suggest that it sees it as containing the final word. It reads as follows:

"Municipal corporations within this state are not required to make return or pay any excise or franchise tax or fee under sections 5727.01 to 5727.62 inclusive, of the Revised Code."

On the other hand, the Company looks to the various sections of the law which impose certain duties upon it as a public utility, private in nature, in the collection by the state of an excise tax upon certain utility operations, specifically, duties contained in R. C. 5727.38. A pertinent portion of that section reads:

"In the month of October, annually, the auditor of state shall charge for collection from each electric light * * * company, a sum in the nature of an excise tax for the priv-

ilege of carrying on its intrastate business, to be computed on the amount fixed and reported by the tax commissioner as the gross receipts of such company on its intrastate business for the year covered by its annual report to the commissioner, as required by section 5727.31 of the Revised Code * * *."

An "excise" tax is imposed on an electric light company, the basis for the calculation of which is the "gross receipts of such company on its intrastate business." R. C. 5727.32 prescribes the form and content of the statement each public utility is required to make annually (R. C. 5727.31 requires reports). Subparagraph (J) (1) of R. C. 5727.32 describes the base as:

"The gross receipts of the company, actually received, from all sources for business done within this state * * *."

"Gross receipts," are determined pursuant to R. C. 5727.33 as the gross receipts of the company, actually received, from all sources, from business done within this state "* * * excluding * * * receipts * * * from interstate business or business done for the federal government or sales to other public utilities * * * for resale * * * provided such other public utility is required to file a statement pursuant to R. C. 5727.31—* * *."

The statutory provisions noted provide the legislative background for the battlelines of state taxing authority and Ohio municipalities. The position of the tax department is reflected in a decision by the Board of Tax Appeals in a Cleveland case, a copy of the decision being supplied by the Tax Commissioner as an exhibit attached to the brief of the Attorney General. The board seems to say that (1) a municipality is not a public utility, according to the definition provided in R. C. 5727.01(A)(2), the fact that a municipality is exempt from the direct burden of excise taxes in no sense influences the requirement that the public utility must include the proceeds from sales of electric power to the City in its gross receipts, and, (3) R. C. 5727.-05 is only designed to protect a municipality from direct liability for excise or franchise taxes.

Representatives of the City, quite understandably, do

not share the view taken by the Board of Tax Appeals. The legislative history of the present legislative enactments provides a beginning point for the discussion of applicable law. The General Assembly passed H. B. 491 (102 Ohio Laws 224, Section 105), May 31, 1911. The language in Section 105 is as follows: ,

"This act shall not be so construed as to require any municipal corporation within this state to make any return or pay any taxes under any provisions of this act."

Some years later, on May 12, 1927, the legislature passed Am. Sub. S. B. 22 (112 Ohio Laws 410).:

"To provide for the determination, charging and collection of a corporation franchise tax for the privileges of exercising the corporate franchise and of doing business within this state * * *."

It amended G. C. 5494 to read as follows:

"No municipal corporation within this state shall be required to make any return or pay any excise or franchise tax or fee under any provision of this act." (112 Ohio Laws 415.)

This language is like that in the present R. C. 5727.-05, although not identical. The difference between the very earliest version which read "This act shall not be so construed," contrasts with the present version which simply says that no municipality "shall be required to make any return or pay" any excise or franchise tax or fee under the public utilities law. Exactly what happened in the 16 years between the two versions to produce a legislative change of mind evades present research, but the rather striking difference in precise language strongly suggests that something did happen.

That there may have occurred some change in philosophy is suggested by a decision by the Court of Appeals for Hamilton County in *The Trustees of the Central Southern Railway* v. *Roth* (1913), 2 Ohio App. 195, which involved a railroad terminal owned by the city of Cincinnati and leased to a railroad. At page 198, the court quotes from a New Jersey decision. The generalization made by that court is noteworthy. It reads as follows:

"The immunity of the property of the state, and of

its political subdivisions, from taxation, does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its property and the property owned by its municipal divisions, to taxation in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its muncipalities. Such property is therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it.''

The rule in the *Roth* case seems to be then that the property of a municipality is excluded from the operation of laws imposing taxes unless there is a clear intent to indicate that it is subject to the taxes imposed. *Ohio River & W. Ry. Co.* v. *Dittey* (S. D. Ohio 1913), 203 F. 537, is of some interest also. At page 540, the court said:

''While the mere declaration of the General Assembly that the tax is an excise tax does not make it so, if it is apparent that it cannot be consistently so designated, nevertheless the declaration of the law making body is entitled to much weight. * * * In view of the decisions, state and federal, it is plain that the tax in question is an excise tax on the doing of corporate intrastate business; the gross intrastate business being the yardstick or measure of taxable value.''

There is ample decision law to establish the right of the General Assembly to enact an excise tax upon corporations in order to compensate for the extra burden inherent in dealing with an intangible body. Franchise taxes levied upon corporations for the privilege of doing business within the state are likewise authorized. Private corporations are the subject of such taxes. [*The Southern Gum Company* v. *Laylin* (1902), 66 Ohio St. 578.] The excise tax is a tax imposed on the performance of an act, the engaging

in of an occupation, or the enjoyment of a privilege. [*Saviers* v. *Smith* (1920), 101 Ohio St. 132.]

The early basic concepts point to the private corporation and indicate no suggestion that municipal corporations, as a governmental unit, are a proper object of such tax devices. The concept clearly applies to the municipality and can have applicability also where a public utility is owned and operated by a municipality. That municipally operated utilities are not to be subject to any additional burdens is indicated by such decisions as that in *The Village of Euclid* v. *Camp Wise Assn.* (1921), 102 Ohio St. 207. Also, see *Board of Education* v. *City of Columbus* (1928), 118 Ohio St. 295.

It is quite accurate to say that municipal corporations are not public utilities, as defined in R. C. 5727.01(A), but it must be emphasized that municipal corporations do own and operate public utilities. See *Mead-Richer* v. *City of Toledo* (1961), 114 Ohio App. 369; *Pfau* v. *City of Cincinnati* (1943), 142 Ohio St. 101; and *Swank* v. *Village of Shiloh* (1957), 166 Ohio St. 415.

In activities in the public utility field, as well as in the area of general government, municipalities enjoy basic protections.

In the instant case then some distinctions are necessary. The city of Columbus, the municipal corporation, entered into a contract with the Columbus and Southern Ohio Electric Company to purchase electrical energy. The energy purchased is used for municipal purposes, street lighting and so forth, and some of it may be resold. Even if the electricity is resold, giving the city a public utility role, the city would not be obliged to make a return or pay an excise tax on the volume of current sold. R. C. 5727.05 exempts that purchased and resold volume from the direct excise tax imposed on private public utility corporations.

A careful look is required as to the tax position on that portion of energy purchased and consumed by the city. Such involves an examination of the troublesome question of the "incidence" of the tax. Counsel for all parties look to a decision of the Supreme Court in *Huntington Natl.*

*Bank* v. *Porterfield* (1970), 23 Ohio St. 2d 131, for guidance. The decision does not speak conclusively as to the question presented to this review, but it does contribute to settling the matter as to "incidence." Clearly, the Ohio sales tax is a tax on a consumer of goods. The *Huntington* decision decides who that consumer is and concludes that the contractor who constructed the Huntington Trust Building is the consumer, not the bank nor the retirement board. Interestingly, the amount of sales tax is clearly identified in any transaction because the invoice covering a sale of goods shows a cost of those goods to the consumer to which is added, separately noted, and calculated a sales tax at the basic rate of 4%. It is a tax which the consumer pays; there is the "incidence."

An examination of the stipulations in this case reveals no recital as to a method of billing. It must be assumed that the invoice sent to the City by the Company shows an amount of energy consumed multiplied by a rate, arrived at by contract, or established with approval of the Public Utilities Commission of Ohio, or both. There is no distinguishable tax imposed upon, or added to that amount. The excise tax device provides as a base upon which the tax is calculated "the gross receipts of such company on its intrastate business." (R. C. 5727.38.) In contrast to the sales tax, the tax does not relate to any single consumer of electrical energy. It is an excise tax upon a particular corporation for the privilege of carrying on that business.

The basic situation here is in no sense comparable to that envisioned in the *Roth* decision, *supra*, where the "taxation of public property would necessarily involve other taxation for the payment of taxes so laid." If such a result would accrue, it could only apply to the cost of the energy used by the City, which is not segregated in the stipulations of fact, and in any event the "excise" could never relate to a tax designed particularly to meet that burden. The facts as stipulated, as well as the operational requirement of the excise tax here imposed, require the conclusion that the "incidence" of the tax rests upon the Company and the City does not "pay" the tax.

It may in no sense be conclusive, but the change in the statutory language as it appeared in 1911, stating that "the act shall not be so construed," to the more simple direct language that no municipality "shall be required to make any return or pay" an excise tax, reflects a legislative intent to exclude municipal corporations, as a governmental unit or an operator of a public utility, from the payment of any *direct* excise tax and nothing more.

For the reasons assigned, the assignments of error offered by the appellant are considered not well taken and are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and HOLMES, JJ., concur.

HOLMES, J., concurring. I concur in the well reasoned decision of Judge Troop herein, but wish to emphasize the basis upon which I have reached my determination that R. C. Chapter 5727 is applicable to power sold to municipalities for the consumption by such municipalities. At the outset, I am compelled to comment that we are significantly aware of the financial needs of our municipalities and the importance of extending relief from their budgetary problems wherever it may lawfully be supported. However, the relief sought here is not from an imposition of a direct tax upon the city, but is relief from the effects of a direct tax upon a private public utility.

It is within the power of the legislature to exempt certain property and activities within Ohio from direct taxation. The legislature also has the power to provide relief from the indirect effects of its taxes.

In Chapter 5727, more specifically R. C. 5727.32(J)(1), the legislature has expressly provided for the avoidance of the indirect effect of this excise tax on certain entities and activities. Such section provides that the gross receipts from interstate business or business done for the federal government, or sales to another public utility which is required to file an excise tax statement are to be excluded from the return made by the utility company. I agree that the receipts from the sale of power to the city of Columbus does not qualify under any of these stated categories.

A specific example of the expressed intent of the General Assembly to insulate governmental entities from the indirect effect of a tax may be found in another chapter of Ohio law, that dealing with the Ohio sales tax. The chapter establishing a sales tax in Ohio provides for direct exemptions from such tax, as well as providing for indirect relief from the effects of the tax for certain express entities. R. C. 5739.02(B)(1) provides that the tax does not apply to "sales to the state, or any of its political subdivisions * * *."

In the same regard, we find that the legislature has provided additional express indirect relief from the sales tax to governmental entities at R. C. 5739.02(B)(13), wherein we note that the sales tax does not apply to the following:

"Building and construction materials sold to construction contractors for incorporation into a structure of improvement to real property under a construction contract with this state or a political subdivision thereof or with the United States government or any of its agencies, building and construction materials sold to construction contractors for incorporation into a structure or improvement to real property which are accepted for ownership by this state or any of its political subdivisions or by the United States government or any of its agencies at the time of completion of such structures or improvements * * *."

It is apparent that the latter section of law was enacted to specifically pronounce the legislative intent to relieve the governmental entities from the indirect effect of the sales tax, even though the "incidence" of the tax was upon the contractor, as stated in *Huntington Natl. Bank* v. *Porterfield* (1970), 23 Ohio St. 2d 131, as pointed out in this decision by Judge Troop.

We conclude then that the exemption set forth in R. C. 5727.05 exempts the municipality from the direct liability for such tax, but does not relieve it from paying the total amounts charged by the utility company for the power consumed by the municipality, even though the rate charged for such power may well reflect the incidence of the tax. If the laws are to be amended to provide for this understandably sought-for relief for the municipalities, it must be the task of the legislature to do so.