WESTERN RESERVE TRANSIT AUTHORITY, APPELLANT, *v*
PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Western Reserve Transit v. Pub. Util. Comm.
(1976), 47 Ohio St. 2d 32.]

(No. 75-852—Decided July 7, 1976.)

34

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buch-mann* and *Mr. James H. Woodring,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Mr. Ronald E. Prater,* for appellee.

.CORRIGAN. J.

*I.*

The propositions of law advanced for the appeal to

this court by Western Reserve, urging that the opinion and order of the commission was unreasonable and unlawful, are twofold:

"I. Before granting any certificate of public convenience and necessity to a motor transportation company the Public Utilities Commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, including existing transportation facilities not regulated by the commission"; and,

"II. When the Public Utilities Commission, in authorizing the amendment of a certificate of public convenience and necessity, fails to take into consideration other existing transportation facilities in the territory for which the certificate is sought, such amendment should be set aside."

These two grounds seem to enlarge the bases of the complaint originally filed with the commission, and, in another respect, to retreat significantly from certain allegations in that complaint. Our function, in an appeal of this kind, is to pass on the reasonableness and lawfulness of the commission's opinion and order.

In its complaint, Western Reserve alleges that Columbiana "not only failed and neglected to advise the commission that complainant rendered service along said route, but affirmatively concealed said fact * * *." Complainant further alleged that such action or inaction on the part of the respondent "induced" false findings of fact made by the commission.

The commission disagreed with complainant that Columbiana misled the commission. It found no fraud was shown on the part of Columbiana, and it is our holding that this was a reasonable and lawful conclusion from the record. Columbiana had no obligation under R. C. 4921.10 to present evidence, at the hearing on its application, about the service of other existing transportation facilities. See *Schwerman Trucking Co.* v. *Pub. Util. Comm.* (1967), 10 Ohio St. 2d 253.

Similarly, the record does not support any intimation of a fraudulent representation of the facts on the part of Columbiana. The sole proprietor of Columbiana, Clayton

C. Dyke, testified at the July 19, 1972, hearing as follows:

"Q. All right. Now, to your knowledge are there any other bus lines operating in that seven miles, under the Public Utilities Commission of Ohio?

"A. No service there under the Public Utilities."

Later, Mr. Dyke testified that:

"Q. You stated that you are the only bus service over your seven mile route

"A. Under Public Utilities."

Again, Mr. Dyke answered to questions at the hearing:

"Q. Mr. Dyke, can you state why it is that you need this restriction removed?

"A. I need the restriction removed in order to try to increase the revenue to make it—the operation of this business profitable.

"Q. At the present time are you operating this line at a loss?

"A Have been operating for the last two years at a loss.

"Q. And is it getting worse as you go on as far as your profit and loss figure?

"A. It is decreasing, approximately, 50 to 100 a year.

"Q. And what will be the consequences if you are not successful in getting this restriction removed?

"A. There will be a loss of service that we already have.

"Q. Well, what will you have to do?

"A. I won't—

"Q. Would you have to curtail your service?

"A. I'll probably have to go out of business altogether * * *.

"Mr. Dickey: One more question. Mr. Dyke, how many passengers do you normally carry per day, now *on your complete route?*

"The Witness: 45 to 50 passengers.

"Mr. Dickey: All right, in the event you might curtail your bus or go out of business completely, is there another service available to them at the present time?

"The Witness: No * * *." (Emphasis added.)

These answers of the owner of Columbiana are forthright and clear. They are not susceptible to an interpretation of deception. Dyke specifically is referring to regulated transportation companies. The commission had the right to accept the answers.

Based upon the original record before it, the commission reasonably and lawfully found that Columbiana's application was in proper form; that notice had been published for three consecutive weeks in a newspaper of general circulation in Columbiana County; that Columbiana's certificate was in good standing; that passengers had taken advantage of Columbiana's new service while it was operating under temporary authority; and that public convenience and necessity would be served by the removal of the restriction from Columbiana's certificate.

In these respects the opinion and order of the commission were also reasonable and lawful, as were its conclusions on the claim of concealment and/or fraud by Columbiana, and disposed of the original complaint of Western Reserve. It is totally unnecessary for us to pass on any other question suggested.

The order of the commission is affirmed as being reasonable and lawful.

*Order affirmed.*

CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.
O'NEILL, C. J., HERBERT and STERN, JJ., dissent.

O'NEILL, C. J., dissenting. The central and controlling issue in this case is whether, before granting any certificate of public convenience and necessity to a motor transportation company, the Public Utilities Commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, including existing transportation facilities not regulated by the commission.

R. C. 4921.10 provides in pertinent part as follows:

"No motor transportation company shall commence

its operation as such in this state without obtaining from the Public Utilities Commission a certificate declaring that public convenience and necessity require such operation.

" * * *

"Before granting any certificate *the commission shall take into consideration other existing transportation facilities* in the territory for which a certificate is sought * * *" (Emphasis added.)

The crux of this case lies in the following two conclusions of law in the commission's order of May 22, 1975:

"(10) All paragraphs under Section 4921.10, Revised Code, must be read in pari materia.

"(11) When the Sections are so read, the language of the third paragraph of that statute must be read to mean 'other existing transportation facilities *REGULATED BY THE PUBLIC UTILITIES COMMISSION.*'" (Emphasis *sic.*)

On the basis of this construction of the statute, the commission concluded that it could not have been misled by Mr. Dyke in the original hearing because the existence of a non-regulated transportation service was irrelevant.

In my view the conclusion of the commission was erroneous. There is no ambiguity in the phrase "other existing transportation facilities." The words as they are written are plain and the meaning is clear. The words make sense and are in accord with the express policy of the statute. This court and the United States Supreme Court have repeatedly held that statutory words must be read in their plain, normal and well understood usage. *Old Colony R. Co.* v. *Commissioner* (1932), 284 U. S. 552; *Eastman* v. *State* (1936), 131 Ohio St. 1, paragraph five of the syllabus.

In my opinion the order in this case should be reversed.

HERBERT and STERN, JJ., concur in the foregoing dissenting opinion.