OHIO EDISON COMPANY, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 78-111—Decided December 8, 1978.)

420

422

*Mr. Russell J. Spetrino, Ms. Frances McGovern* and *Mr. Anthony J. Alexander,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Harris S. Leven,* for appellee.

*Messrs. Quine & Davis, Mr. James E. Davis, Messrs. Roetzel & Andress* and *Mr. Norman S. Carr,* for intervenor appellee RCA Rubber Co.

*Per Curiam.* R. C. 4905.22 states, in pertinent part: "* * * All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or *by order of the public utilities commission* * * *." (Emphasis added.)

R. C. 4905.32 provides, in pertinent part:

"No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll or charge for any service rendered or to be rendered, than that applicable to such service as specified in its schedule filed with the public utilities commission which is in effect at the time."

The single issue herein is whether the appellant, by charging the rates contained in a tariff which was formally approved for journalization on May 24, for service rendered between April 23 and May 23, 1973, was in violation of the order of May 24, and, or, in violation of the provisions of R. C. 4905.22 and 4905.32. In order to resolve that issue, we must first determine the interpretation to be placed on the wording of the second paragraph of that entry, which provided that the "amended tariff schedules shall become effective with the first billing for electric service after the date of this entry."

It clearly appears that the commission made no attempt to ascertain the meaning of the May 24 entry under any rules of English grammar; nor did it attempt to ascertain the intention of the entry in the light of conditions existing, and procedures followed[2] by the commission at such time. Instead, in legal effect, it took the position that irrespective of the language actually employed in the entry, of the intent of those persons who were at the time members of the commission, or of the good faith of Ohio Edison in its interpretation of the language of the order, the provisions of R. C. 4905.22 and 4905.32 were violated by the April 23 to May 23 billing; and that the order of May 24, 1973, cannot be construed as one authorizing a violation of law. On the basis of this reasoning the commission takes the position that the reference to the "schedule filed" with it "which is in effect at the time," contained in R. C. 4905.32, necessarily refers to the performance of the service and not to the charge therefor. Although the commission's present interpretation of R. C. 4905.32 might be considered suspect, we conclude that the resolution of this question is not required at this time. We note, however, that with respect to "service rendered," the statute speaks of "any service rendered [past tense] *or* to be rendered [future tense]."

Even if it be assumed that the order of the commission of May 24, 1973, would be "unlawful" in providing that the amended tariff schedules shall become effective "with the first billing," compliance with that order is required. R. C. 4905.32 prohibits a public utility from charging any "different rate." This basic principle of public utility law underlies the holdings of this court in *Keco Industries, Inc.* v. *Cincinnati & Suburban Bell Telephone Co.* (1957), 166

---

[2] A study of the language of comparable orders made by the commission clearly indicates that, at least until recently, it was customary to provide that the new tariff schedules should become effective, based upon the *date of billing* without reference to whether the utility service was delivered prior to the final approval by journalization of an amended tariff schedule. In all such cases, however, it would appear that the service was rendered subsequent to the order of the commission finding the prior tariff schedules inadequate and *ordering* a modification thereof.

Ohio St. 254; and *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1976), 46 Ohio St. 2d 105.

We think it clear, as a matter of English grammar, that the words "for electric service" contained in the commission's entry of May 24, had reference only to the nature of the billing and that the words "after the date of this entry" obviously had reference to "the first billing" for such service. If the effectiveness of the amended tariff schedules were limited to the performance of electric service subsequent to May 24, any reference to the schedules becoming effective with "the first billing" would be meaningless. Here it should also be noted that the caption of the proceeding before the commission at that time involved the matter of the application of Ohio Edison for authority to amend and increase certain of its schedules "fixing rates and charges *for electric service*," and that as indicated in the record, the same commission on December 14, 1973, approved a different application of Ohio Edison to increase its rates and charges *"for steam service."*

Counsel for the commission, citing *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, argues, in effect, that even if the entry of May 24, 1973, by its terms, and in accordance with established practice at the time, would permit Ohio Edison to include service rendered from April 23 to May 23, 1973, in its "next billing," utilizing the new tariffs, nevertheless the commission can alter its established practices if it finds such practices are in error. That case does not support the assertion that a public utility may now be found to have violated the law by obedience to an order following a practice which the commission now finds to be in error. Such result would necessarily be violative of the provisions of Section 10, Article I of the United States Constitution, and Section 28, Article II of the Ohio Constitution, in that it would be an attempt to retroactively change a regulatory order of the commission, having the effect of an existing law.

To the extent that the ruling of the commission here appealed, and the arguments of counsel in support thereof,

might imply that an order authorizing the utilization of increased rates in the "next billing," including charges for distribution of electric energy already consumed, would be violative of constitutional provisions pertaining to retroactive legislation, it should be noted that in the cause *sub judice* the order of the commission allowing an increase in electric rates was entered on April 19, 1973, prior to the rendition of the electric service for the period of time here in issue. The essential question before the commission on May 24, 1973, was whether the tariff schedules under scrutiny *complied* with the commission's prior order of April 19. The commission found that they did. Under these circumstances the action of Ohio Edison in utilizing the long sought after increase for charges for electricity (the application of Ohio Edison for increased rates having been filed in 1970) for April 23 to May 23 would not be violative of retroactive constitutional restrictions. See *Pub. Util. Comm. of Ohio* v. *United Fuel Gas Co.* (1943), 317 U. S. 456.

Counsel for the commission also, in effect, asserts that even if Ohio Edison fully complied with the commission's entry, it nevertheless was in violation of the provisions of R. C. 4905.32; and since it was charged with knowledge of such law, Ohio Edison was obligated to follow "the dictates" of the statute regardless of the wording of the entry. This assertion is without merit. Where, as here, the actions of a public utility are in compliance with an order of the commission, the fact, if it be a fact, that the commission's order itself is in violation of statutory law does not permit a conclusion that the public utility has violated the statute or that its acts, in obedience to the order of the commission, are "unlawful" within the purview of R. C. 4905.61.

As stated in *Keco Industries, Inc., supra* (166 Ohio St. 254, 258), an Ohio public utility "has no choice but to collect the rates set by order of the commission, in the absence of a stay of execution * * *."

This court concludes, therefore, that the order of the commission finding that Ohio Edison violated R. C. 4905.-

22 and 4905.32, and violated the commission's entry of May 24, 1973, is unlawful and unreasonable. The order of the commission is, therefore, reversed.

*Order reversed.*

LEACH, C. J., HERBERT, W. BROWN, P. BROWN and HOLMES, JJ., concur.
CELEBREZZE and LOCHER, JJ., dissent.

HOLMES, J., of the Tenth Appellate District, sitting for SWEENEY, J.

LOCHER, J., dissenting. This court has consistently affirmed the commission's orders echoing that the function of this court is limited on appeal, and the court must affirm the commission if the order is not unreasonable or unlawful. *Cremean* v. *Pub. Util. Comm.* (1976), 48 Ohio St. 2d 163; *Western Reserve Transit* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 32; *Electrical Workers* v. *Pub. Util. Comm.* (1974), 40 Ohio St. 2d 86; *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381. The instant order of the commission, being neither unlawful nor unreasonable, should be affirmed.

In this cause, the wording of the May 24, 1973, entry is unambiguous and grants the increased rates "for electric service after the date of this entry." The rate which Ohio Edison charges and which its customers pay is based upon service, not Ohio Edison's retroactive billing policy. R. C. 4905.32. Moreover, the commission's interpretation of the 1973 entry is the only possible lawful interpretation under R. C. 4905.32. The commission's authority today or in 1973 is limited by the law. It must, therefore, be presumed that the commission, in 1973, intended to act lawfully and not unlawfully.

A conclusion contrary to the commission's as stated in its October 5, 1977, order would be unreasonable and unlawful. In order to have arrived at the result urged by

Ohio Edison, the commission would need to delete the words "for electric service" from the 1973 entry and presume that the commission intended to act unlawfully. Finding that the commission properly determined that Ohio Edison did violate the 1973 order, thus violating R. C. 4905.22 and 4905.32, I respectfully dissent.

CELEBREZZE, J., concurs in the foregoing dissenting opinion.