EAST OHIO GAS COMPANY, APPELLANT, *v.* LIMBACH, TAX COMMR., ET AL., APPELLEES.

[Cite as East Ohio Gas Co. *v.* Limbach (1986), 26 Ohio St. 3d 63.]

(No. 85-1706—Decided August 20, 1986.)

*Jones, Day, Reavis & Pogue, Maynard F. Thomson, John C. Duffy, Jr., Charles M. Kennedy, John W. Zeiger, Crabbe, Brown, Jones, Potts & Schmidt, Wilbur W. Jones, William J. Brown* and *Donald Zito,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Richard C. Farrin* and *David E. Northrop,* for appellees.

*Thomas E. Morgan, Roger C. Post* and *James R. Berendsen,* urging reversal for *amicus curiae,* Columbia Gas of Ohio, Inc.

*Per Curiam.* Appellant East Ohio Gas first challenges the constitutionality of Section 29 of Am. Sub. H.B. No. 100, which suspended the application of R.C. 4909.161 as to the increased tax levy imposed by the bill. Appellant asserts that in calculating its expenses as part of the ratemaking process, it reasonably relied to its detriment on the assurance contained in R.C. 4909.161 that it could recover any increased tax liability. Appellant contends that pursuant to Section 28, Article II of the Ohio Constitution, the General Assembly is estopped from retroactively altering the law upon which the company relied at the time its rate of return was fixed.

This court, in a unanimous decision, previously rejected a similar argument. In *Coca-Cola Bottling Corp.* v. *Lindley* (1978), 54 Ohio St. 2d 1 [8 O.O.3d 1], appellants contended that the three-year filing deadline of R.C. 5733.12 (effective in December 1971) did not govern their applications for franchise tax refunds because their tax obligations were incurred prior to the effective date of that statute. The court first observed at 6 that "* * * [t]he prohibition against retroactive laws 'is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby' " (quoting *Lakengren* v. *Kosydar* [1975], 44 Ohio St. 2d 199, 201 [73 O.O.2d 502]). We then concluded that no retroactive effect had occurred, stating at 7-8 as follows:

"* * * [T]he legal significance of appellants' pre-December 1971 conduct was not changed when R.C. 5733.12 became effective; and appellants did not rely on the pre-December 1971 refund provision to their detriment. * * *

"* * * R.C. 5733.12 did not impose new duties and obligations on, or change the legal significance of, appellants' pre-December 1971 conduct.

The primary obligation imposed by the substitution of R.C. 5733.12 * * * is the duty to file an application for a franchise tax refund within three, rather than five, years. Since appellants could not have begun to file those applications until after they paid their taxes, and since they did not pay franchise taxes on their 1971 earnings until after R.C. 5733.12 became effective, the enactment of R.C. 5733.12 did not impose new legal obligations on, or change the legal significance of, appellants' *past* conduct." (Emphasis added.)

Likewise, in the instant case, appellant could not have recovered the increased levy until it paid its taxes, for the provision of R.C. 4909.161 triggering recovery of an increased levy is keyed to the payment of a tax. *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 91, 97. Since appellant could not have recovered the increase until it paid its taxes after the close of its tax year (April 30, 1983), and since appellant did not pay the increased levy until after Section 29 became effective (February 24, 1983), the enactment of Section 29 "did not impose new legal obligations on, or change the legal significance of, appellants' *past* conduct." (Emphasis *sic.*) *Coca-Cola Bottling Corp., supra,* at 8. Therefore, Section 29 of Am. Sub. H.B. No. 100 operated prospectively only to suspend recovery of payment of an increased levy made after the effective date of the bill.

Appellant also asserts that the .5 percent increase in the annual excise tax enacted in Section 6 of Am. Sub. H.B. No. 100 was unconstitutionally retroactive in operation. Appellant contends that once tax liability is fixed and calculable, that liability may not retroactively be increased. The linchpin of appellant's argument is its claim that the excise tax on its gross receipts is a transactional tax comparable in nature to a sales tax, calculable with certainty as each dollar is received. Thus, appellant contends, the General Assembly is estopped from increasing its tax liability for the period prior to the effective date of Am. Sub. H.B. No. 100.

Appellant mischaracterizes the nature of the tax imposed upon it pursuant to R.C. 5727.38. It is not a tax on daily transactions. Rather, R.C. 5727.38 stated in relevant part that this is an annual excise tax, calculated at the conclusion of the utility's tax year, based upon gross receipts from an annual period:

"On or before the third Monday of November, annually, the auditor of state shall charge for collection from each * * * [public utility company other than freight line, equipment, and railroad companies], a *sum in the nature of an excise tax for the privilege of carrying on its intrastate business, to be computed on the amount fixed and reported by the tax commissioner as the gross receipts of such company on its intrastate business for the year covered by its annual report to the commissioner * * *.*" (Emphasis added.) (139 Ohio Laws, Part II, 3460, 3999.)

This court has previously stated that the excise tax on public utilities is a tax on a privilege — the privilege of doing business in this state. *State, ex*

*rel. Cleveland,* v. *Kosydar* (1973), 36 Ohio St. 2d 183, 184 [65 O.O.2d 401]. The critical legal distinction which appellant ignores is that the tax is not imposed on gross receipts as they are received. Annual gross receipts are merely the measure of the tax on the privilege. *State, ex rel. Cleveland, supra,* at 185 (O'Neill, C.J., concurring); *Express Co.* v. *State* (1896), 55 Ohio St. 69, 81; *Columbus & Southern Electric* v. *Porterfield* (1974), 41 Ohio App. 2d 191, 196 [70 O.O.2d 404].

Similarly, the annual franchise tax levied on corporations is also a tax on the privilege of doing business in this state. R.C. 5733.01(A); *Woodland Gardens Apartments* v. *Porterfield* (1968), 16 Ohio St. 2d 56. Both the excise tax on public utilities and the franchise tax on corporations are levied on the exercise of a privilege and not on income, sales or receipts. Further, both taxes are based upon the results of an entire year of doing business and tax liability is not fixed until the end of that annual period, rather than fixed at a given moment in time prior to the end of that period as appellant contends. Thus, the decisions of this court applying Section 28, Article II to franchise tax statutes are particularly relevant to the instant case.

In *Lakengren* v. *Kosydar, supra,* the General Assembly attempted to increase the franchise tax obligation of a corporation after its accounting year had closed. This court held the statutory increase void as a retroactive law under those circumstances, even while noting at 204 that nothing prevented the General Assembly "from levying a tax payable in the future, based upon the income of periods ending after the enactment of the levy."

In *Burke Internatl.* v. *Lindley* (1979), 58 Ohio St. 2d 27 [12 O.O.3d 15], a unanimous court held in the syllabus that the same amendment at issue in *Lakengren* v. *Kosydar, supra,* was not unconstitutionally retroactive when applied to a corporate taxpayer whose accounting year was not closed at the time the amendment became effective. The court stated at 29 that "* * * when an accounting year is open for the taxpayer, it is open for the taxing authority as well. * * *" This court then followed *Burke Internatl., supra,* in *Atlas Crankshaft Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 299 [12 O.O.3d 288], where we also held that since appellant's tax year was not closed at the effective date of the amended statute, it was not unconstitutional to require appellant to file its tax return in accordance with the amendment.

In the instant case, pursuant to R.C. 5727.38, appellant's excise tax liability was calculable and payable only after its tax year had concluded. As we reasoned in *Lakengren* v. *Kosydar, supra,* at 203, it is not until an accounting year is closed that a taxpayer is entitled to consider that its income (or gross receipts) is finally its own. Applying the rule of *Lakengren, Burke Internatl.,* and *Atlas Crankshaft Corp., supra,* to this appeal, we conclude that where an excise tax on the privilege of doing business is measured by the gross receipts from the operation of the business for an annual period, the tax rate may constitutionally be increased at a time

prior to the end of that annual period. Appellant's tax year did not close until April 30, 1983. The increased levy provided by Section 6 of Am. Sub. H.B. No. 100 became effective February 24, 1983, prior to the close of appellant's tax year. Therefore, the increase levied by Section 6 of the bill did not operate in violation of Section 28, Article II of the Ohio Constitution.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, DOUGLAS and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. A fundamental tenet of the Ohio Constitution is that the General Assembly shall have no power to pass retroactive laws. Section 28, Article II of the Ohio Constitution. The majority has failed to heed an admonition issued by this court: "* * * The prohibition against retroactive laws is not a form of words: it is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby." *Lakengren v. Kosydar* (1975), 44 Ohio St. 2d 199, at 201 [73 O.O.2d 502].

R.C. 4909.15(A)(2) provides that a public utility, such as East Ohio Gas, is entitled to "[a] fair and reasonable rate of return." In determining the fair and reasonable rate of return, the Public Utilities Commission must take into account the risks under which the utility operates, because investor perception of risk directly affects the cost of equity to the utility. See *Dayton Power & Light Co.* v. *Pub. Util. Comm.* (1980), 61 Ohio St. 2d 215, 217 [15 O.O.3d 230]; *Masury Water Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 147, 151 [12 O.O.3d 163]. See *Bluefield Water Works & Improvement Co.* v. *Pub. Serv. Comm.* (1923), 262 U.S. 679.

One of the risks that is factored into ratemaking is the risk that certain expenses will not be recoverable by the utility from its customers. When the commission calculated the 12.57 percent rate of return for East Ohio Gas it did *not* factor into this computation the risk that East Ohio Gas would be subject to increased excise taxes. The commission did not consider this risk because R.C. 4909.161 provided that "* * * the payment of any type of increased excise tax levy shall be considered to be a normal expense incurred by a public utility in the course of rendering service to the public, and *may be recovered* as such in accordance with an order of the public utilities commission. * * *" (Emphasis added.)

On February 24, 1983, the General Assembly enacted Am. Sub. H.B.

No. 100, which increased East Ohio Gas' excise tax by .5 percent and at the same time prohibited East Ohio Gas from recovering from its customers the resultant $6.5 million increase in its tax obligation. This court has previously held that the commission may not constitutionally revise the provisions of a rate order to expose a utility to additional liability for transactions already completed on the basis of reliance upon that order. *Ohio Edison Co.* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 419 [10 O.O.3d 523]. It is bizarre that the General Assembly should be allowed to accomplish this result by simply withdrawing the statutory mandate on which the utility rates were predicated.

The excise tax imposed on East Ohio Gas is measured by gross receipts and not by net income. The trial court found and the court of appeals did not dispute that "East Ohio [Gas'] taxable gross receipts can be determined with 'absolute certainty at the close of each business day.' " This court has determined that " 'every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, *must be deemed retrospective* [*sic*] * * *.' (Emphasis added.)" *Perk* v. *Euclid* (1969), 17 Ohio St. 2d 4, 8 [46 O.O.2d 60], citing *Society for the Propogation of Gospel* v. *Wheeler* (1814), 2 Gall. (U.S.C.C.) 105, 139. Because the statute imposes an obligation with respect to transactions that had already passed, it must be deemed retroactive and therefore unconstitutional. See *Perk, supra.*

The majority concludes that the statutory enactment is constitutionally permissible under Section 28, Article II because East Ohio Gas' accounting period or tax year for purposes of excise tax collection was still open on February 24, 1983 when Am. Sub. H.B. No. 100 became effective. The majority's reliance on *Lakengren* is misplaced. The concept of an accounting year was the focal point in *Lakengren* and its progeny only because the issue involved a tax measured by net income. The majority's rationale is contrary to this court's decisions in *Lakengren, supra; Safford* v. *Metropolitan Life Ins. Co.* (1928), 119 Ohio St. 332; *Atlas Crankshaft Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 299 [12 O.O.3d 288]; *Burke Internatl. Research Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 27 [12 O.O.3d 15]; and *Coca-Cola Bottling Corp.* v. *Lindley* (1978), 54 Ohio St. 2d 1 [8 O.O.3d 1]. These cases hold that where the taxpayer's tax liability remains incalculable, the tax rate may be altered. But where a taxpayer's tax liability for a particular transaction *is* calculable, the tax consequences of that transaction may not be altered. Contrary to the majority's opinion this court has not equated net income with gross receipts because they are not equivalent, and they generate dissimilar tax expectations. The critical distinction between gross receipts and income is that gross receipts, and their accompanying tax liability, are fixed and determinable as soon as they are "actually received." A tax measured by gross receipts, like a sales tax, is in effect a transactional tax. Each dollar received carries with

it a fixed and immediately calculable tax liability regardless of when the tax must actually be paid. On the other hand, a tax measured by income is by definition only determinable after the relevant time period has closed.

The trial court applied the analysis that is consistent with this court's previous holdings. It is my opinion that, by prohibiting the plaintiff taxpayer from recovering its increased tax liability through an adjustment of its rates, Am. Sub. H.B. No. 100 has effectively confiscated part of the earnings the commission had previously determined East Ohio Gas would be entitled to receive. The rate of return authorized in case No. 81-970-GA-AIR was determined after the commission had first considered East Ohio Gas' anticipated operating expenses, which included projected excise taxes at the then applicable rate. The state may increase taxes or enact new ones as it deems reasonable, but it may not, consistent with Section 28, Article II, impose new obligations on past transactions. Had East Ohio Gas been allowed to include the tax increase in its cost structure and pass it along in its rates to its customers, Am. Sub. H.B. No. 100 would have had a purely prospective effect. Am. Sub. H.B. No. 100 unconstitutionally creates a new nonrecoverable financial obligation of over $6 million with respect to prior gross receipts obtained from rates established pursuant to R.C. 4909.15(A)(2).

Accordingly, I respectfully dissent.

HOLMES and DOUGLAS, JJ., concur in the foregoing dissenting opinion.