[Cite as *New Par v. Pub. Util. Comm.*, 98 Ohio St.3d 277, 2002-Ohio-7245.]

NEW PAR, F.K.A. AIRTOUCH CELLULAR, N.K.A. VERIZON, ET AL., APPELLANTS

*v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *New Par v. Pub. Util. Comm.*, 98 Ohio St.3d 277, 2002-Ohio-7245.]

*Public Utilities Commission — Wholesale cellular telephone service resales —*
*Ohio law not preempted by Section 332(c)(3)(A), Title 47, U.S.Code.*

(No. 2001-1132 — Submitted November 13, 2002 — Decided December 30, 2002.)

APPEAL from the Public Utilities Commission of Ohio, No. 93-1758-RC-CSS.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶1} This is an appeal as of right. The appellants are New Par, f.k.a. AirTouch Cellular, n.k.a. Verizon, and a number of other entities that have done business as cellular telephone service providers. The appellees are the Public Utilities Commission of Ohio ("commission") and intervenor Westside Cellular, Inc., which does business as Cellnet.

{¶2} Cellnet is a cellular telephone service reseller. As such, it purchases cellular service on a wholesale basis, rebrands the service, and markets it to the general public on a retail basis. On October 18, 1993, Cellnet filed a complaint in commission case No. 93-1758-RC-CSS against wholesale cellular service providers, including New Par. The complaint asserted that the appellants discriminated against Cellnet by unlawfully providing cellular service, equipment, and features to its own affiliated resellers at rates, terms, and conditions more favorable than those they made available to Cellnet. In its January 18, 2001 opinion and order ("the order"), the commission generally agreed with Cellnet's assertions and held that the appellants, in violation of commission rules and

regulations and Ohio statutes, had unlawfully discriminated against Cellnet by providing cellular service to appellants' affiliated resellers at rates and upon terms and conditions more favorable than those made available to unaffiliated resellers, such as Cellnet.

**{¶3}** Appellants argue that the order is unlawful because (1) the commission's jurisdiction was preempted by federal law; (2) the commission based part of its decision on regulations that appellants claim are invalid because they were not properly promulgated or are so vague as to be unenforceable; and (3) the evidence does not establish that appellants' conduct was unlawfully discriminatory.

Appellants' Preemption Argument

**{¶4}** The order depends in part on regulatory determinations by the commission in two earlier proceedings before it: *In the Matter of the Commission Investigation Into the Regulatory Framework for Telecommunication Services in Ohio*, case No. 84-944-TP-COI, April 9, 1985 Opinion and Order (the "944 order"), and *In the Matter of the Commission Investigation Into Implementation of Sections 4927.01 through 4927.05, Revised Code, as They Relate to Competitive Telecommunication Services*, case No. 89-563-TP-COI, October 22, 1993 Finding and Order (the "563 order"). The order is also based upon the commission's findings under R.C. 4905.33 and 4905.35, which pertain to unjust corporate practices, and its authority to address these complaints pursuant to R.C. 4905.26.

**{¶5}** Appellants argue that the commission's authority to regulate appellants' operations regarding rates was preempted by the 1993 Congressional enactment of Section 332 of the Communications Act, which reads as follows:

**{¶6}** "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, *except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.*"

2

(Emphasis added.) Section 332(c)(3)(A), Title 47, U.S.Code. Section 332 includes a grandfathering clause that permitted states to regulate "rates charged" if the state showed by August 9, 1994, in an appropriate petition to the Federal Communications Commission, that it had "any regulation concerning the rates for any commercial mobile radio service" ("CMRS") in effect on June 1, 1993. Section 332(c)(3)(B). States retained their authority to regulate "rates charged" until the FCC decided the states' petitions, "including any reconsideration." Id.

{¶7} Even though it did not believe that it was regulating rates, the commission submitted such a petition, informing the FCC that it was "using its complaint authority to ensure that the rates of a cellular wholesaler are not unduly discriminatory, preferential to affiliates, or anticompetitively set below cost." *In the Matter of Petition of the State of Ohio for Authority to Continue to Regulate Commercial Mobile Radio Services* (1995), 10 F.C.C.R. 7842, 1995 WL 312498. The FCC denied Ohio's petition to continue regulation, in part because the commission did not demonstrate that it was regulating the "rates charged" by any CMRS provider in Ohio as of June 1, 1993.

{¶8} Indeed, prior to this appeal appellants' preemption argument has been adjudicated 12 times by various tribunals and regulatory agencies, including the commission and the FCC. Heretofore, New Par has enjoyed not a single unreversed determination of federal preemption under Section 332(c)(3)(A), Title 47, U.S.Code. Appellants make their preemption argument a 13th time in this appeal.

{¶9} We will not here reprise an analysis of the legal requirements for federal statutory preemption of state law. We conclude that the commission's determinations in its 944 and 563 orders and its enforcement of R.C. 4905.33 and 4905.35 under R.C. 4905.26 in this complaint were not regulation of appellants' rates under Section 332, Title 47, U.S.Code, because the commission was "regulating the other terms and conditions of [appellants'] commercial mobile

services." Section 332(c)(3)(A), Title 47, U.S.Code. As a result, the commission's regulation of appellants was not preempted under the federal statute.

Regulations Improperly Adopted or Vague

{¶10} Appellants argue that the regulatory requirements established in the 944 and 563 orders, by which the commission judged appellants' business conduct, amounted to administrative rules having general and uniform operation applicable to all cellular service providers. Consequently, appellants claim, the requirements were not properly promulgated pursuant to R.C. 111.15, and, thus, they were invalid and unenforceable. Appellants might well have included in their argument agency promulgation of rules pursuant to R.C. 119.03 by virtue of the commission's inclusion as a rule-making agency under R.C. 119.01(I).

{¶11} What appellants' argument ignores is that prior to 1997, the commission's rule-making activities were not subject to the mandatory requirements of either R.C. 111.15 or 119.03. And the commission argues that it acted in accordance with the law: believing that the procedures under these statutes did not apply to the commission, it would sometimes file rules or determinations with the Joint Committee on Agency Rule Review ("JCARR"), the Secretary of State, the Legislative Service Commission ("LSC"), or none of them, in its discretion.

{¶12} In 1997, the General Assembly changed this situation. By adopting Am.Sub.H.B. No. 215, the General Assembly amended portions of both R.C. 111.15 and 119.01 to include the commission within the R.C. 111.15 and 119.03 processes. R.C. 111.15 was amended to require the Public Utilities Commission to follow rule-making protocols. 147 Ohio Laws 909, 941. The definition of "rule making agency" in R.C. 119.01 was amended to include the commission. Id. at 948. Since statutes must be presumed to be prospective in their effects, these amendments mean that prior to their effective date, the

commission was not subject to the rule-making procedures under either R.C. 111.15 or 119.03. R.C. 1.48. Not only is there the statutory presumption of prospective application of R.C. 111.15 and 119.03 as regards rule-making by the commission, but the General Assembly intended the changes bringing the commission into the rule-making process to be prospective. It said so:

{¶13} "Sections 111.15 and 119.01 of the Revised Code, insofar as those sections are amended by this act to clarify that rules of the Public Utilities Commission are subject to legislative review, apply prospectively only. A rule of the Public Utilities Commission adopted prior to the effective date of the amendment of § 111.15 and 119.01 of the Revised Code, which rule was not submitted to legislative review, is ratified, insofar as that omission otherwise may raise a question with respect to the validity of the rule." 1997 Am.Sub.H.B. No. 215, Section 155, 147 Ohio Laws, Part I, 909, 2194. Thus, the General Assembly recognized the commission's exemption from statutory rule-making procedures and indicated that the statutory changes needed to bring the commission into the rule-making requirements would "apply prospectively only." Id. The effect of the 1997 amendments was to make future rule-making activity by the commission subject to R.C. 111.15 and 119.03, while leaving earlier determinations in force. Since the 944 and the 563 orders both predate this legislation, they are effective without regard to R.C. 111.15, 119.01, and 119.03.

{¶14} Appellants not only argue unconvincingly that the regulatory requirements established in the 944 and 563 orders were improperly adopted administrative rules, but that the orders were so vague as to be unenforceable.

{¶15} Some of appellants actively participated in the commission proceedings that resulted in the 563 orders and submitted comments to the commission that urged the commission to adopt the streamlined regulations contained in the order. Additionally, shortly after the 944 order was adopted, appellants' predecessors-in-interest applied for and received from the commission

certificates of convenience and necessity to operate as deregulated cellular telecommunication service providers. In connection with each of their applications, the applicant provided to the commission an affidavit agreeing to comply with the very requirements of the 944 order that appellants now challenge as being overly vague. Moreover, it is undisputed that appellants have accepted and enjoyed a number of benefits that flowed from the deregulation of retail cellular service providers pursuant to the 944 and 563 orders.

{¶16} Based on the foregoing, we will not now accept appellants' argument that those orders are so vague as to be unenforceable. Indeed, we emphatically reject appellants' argument.

Evidence of Unlawfully Discriminatory Conduct

{¶17} Appellants have told this court that the evidence considered by the commission does not support its findings of their unlawful discriminatory conduct. In asking the court to agree with them and reverse the commission, appellants are requesting that the court examine and weigh the evidence contained in a record of over 1,100 pages of testimony and thousands of pages of exhibits. It is clear from the order that the commission carefully and thoroughly considered the evidence before it. We hereby decline to review and weigh that evidence anew on authority of *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (2001), 92 Ohio St.3d 177, 179-180, 749 N.E.2d 262 (and cases cited therein), as cited with approval in *AK Steel Corp. v. Pub. Util. Comm.* (2002), 95 Ohio St.3d 81, 84, 765 N.E.2d 862, and *Westside Cellular, Inc. v. Pub. Util. Comm.* 98 Ohio St.3d 165, 2002-Ohio-7119, 761 N.E.2d 199.

{¶18} Therefore, we affirm the order of the commission as to all issues.

Order affirmed.

MOYER, C.J., DOUGLAS, FARMER, PFEIFER AND LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for RESNICK, J.

_____

Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, Daniel W. Costello and Thomas O. Gorman, for appellants.

Betty D. Montgomery, Attorney General, Steven T. Nourse, Duane W. Luckey, Kimberly A. Danosi and Thomas W. McNamee, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

Hahn, Loeser & Parks, L.L.P., Robert J. Fogarty, Randy J. Hart, Janine L. Migden and Mark D. Griffin; Tricarichi & Carnes and Carla M. Tricarichi, for intervening appellee Westside Cellular, Inc.

_____