DISCOUNT CELLULAR, INC., ET AL., APPELLANTS, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Discount Cellular, Inc. v. Pub. Util. Comm.,*
112 Ohio St.3d 360, 2007-Ohio-53.]

(Nos. 2005–2209, 2005–2368, 2005–2369, and 2005–2370—Submitted
October 3, 2006—Decided January 24, 2007.)

LUNDBERG STRATTON, J.

## Background

{¶ 1} These are appeals as of right by appellants, Discount Cellular, Inc. ("Discount Cellular" or "Discount"), Richards Ltd., Inc., d.b.a. Advanced Cellular & Paging Services ("Advanced Cellular"), Intermessage Wireless Associates, Ltd. ("Intermessage Wireless"), and Jeff Rand Corporation, d.b.a. Wireless Outlet ("Wireless Outlet"), from orders of the Public Utilities Commission of Ohio ("commission" or "PUCO") in case Nos. 04–236–RC–CSS, 05–190–RC–CSS, 05–811–RC–CSS, and 05–812–RC–CSS. Ameritech Mobile Communications, L.L.C., with Cincinnati SMSA Limited Partnership ("Ameritech" or "intervenors"), and Verizon Wireless ("Verizon" or "intervenors") have intervened as appellees.

{¶ 2} Appellants are cellular telephone service resellers. As such, appellants purchase cellular service on a wholesale basis, rebrand the service, and market it to the general public on a retail basis. Intervenors are engaged in business as wholesale cellular telephone service providers.

{¶ 3} The backdrop for these appeals is R.C. Chapter 4927, which the General Assembly enacted in 1988 to give the commission broad authority to implement alternative regulatory requirements and other deregulatory actions for the telecommunications industry in Ohio. Am.Sub.H.B. No. 563, 142 Ohio Laws, Part III, 4369. Specific to this matter, R.C. 4927.03(A)(1), as enacted,[1] provided that the commission, "upon its own initiative or the application of a telephone company * * *, may, by order, exempt any telephone company or companies, as to any public telecommunications service except basic local exchange service, from any provision of Chapter 4505. or 4909. of the Revised Code or any rule or order issued under those chapters, or establish alternative regulatory requirements * * *; provided the commission finds that any such measure is in the public interest and either * * * [t]he telephone company or companies are subject to competition with respect to such public telecommunications service * * * [or]

---

1. R.C. 4927.03 was amended in 2005. Some subsections were relettered, but insofar as relevant here, the former and current versions are the same in substance. All references are to the former version, which was controlling during the time periods involved in this matter. See 2005 Am.Sub.H.B. No. 218, eff. Nov. 4, 2005.

[t]he customers of such public telecommunications service have reasonably available alternatives."

{¶ 4} In 1993, the commission exercised its alternative regulatory authority and issued guidelines for the entire telecommunications industry. See *In the Matter of the Commission Investigation into the Implementation of Sections 4927.01 Through 4927.05, Revised Code, as They Relate to Competitive Telecommunication Services*, case No. 89-563-TP-COI, 1993 WL 500056 (Oct. 22, 1993) (the "563 Guidelines"). In the 563 Guidelines, the commission determined that further relaxation of its regulatory oversight of the cellular telephone market was warranted. The commission found cellular telephone service to be a "competitive telecommunication service" but did not believe that complete deregulation was justified. To that end, the commission decided to maintain certain regulatory requirements concerning the cellular wholesale industry in order to protect the public from anticompetitive conduct by wholesale providers of cellular telephone service.

{¶ 5} Under the 563 Guidelines, the commission required that wholesale providers (1) provide access to cellular service on a nondiscriminatory basis to all cellular service resellers, affiliated and nonaffiliated alike, (2) maintain separate wholesale and retail operations, (3) maintain detailed written records of transactions between themselves and their affiliated cellular service resellers, and (4) maintain comprehensive records of all inquiries from potential resale customers and of transactions between the wholesalers and unaffiliated cellular service resellers. The PUCO also made it clear that R.C. 4905.26 complaint proceedings remained available to address regulatory violations committed by cellular telephone service providers.

{¶ 6} In 1999, the commission issued an order exempting cellular service providers from a number of existing regulatory requirements. *In the Matter of the Commission Investigation into the Alternative Regulatory Treatment of Commercial Mobile Radio Service Providers*, case No. 99-1700-TP-COI (Dec. 16, 1999) (the "1700 Order").[2] Specifically, the commission exempted cellular wholesale service providers from R.C. 4905.26 complaint proceedings. The commission noted that future complaints alleging anticompetitive and discriminatory conduct by cellular service providers could be brought before the Federal Communications Commission ("FCC"). The commission also exempted cellular service providers from R.C. 4905.33 (rebates, special rates, and free service prohibited), 4905.34 (exceptions), and 4905.35 (discriminatory conduct prohibited).

---

2. Commercial mobile radio service providers include mobile telephone, cellular telephone, paging, and personal communication service providers.

The commission further made other temporary exemptions that had been granted in the 563 Guidelines permanent.

{¶ 7} On February 24, 2004, Discount Cellular filed a complaint pursuant to R.C. 4905.26 alleging that Ameritech had discriminated against Discount when it (1) failed to maintain separate wholesale and retail operations, (2) cross-subsidized its retail operations with profits generated through its wholesale operations, and (3) failed to provide Discount with cellular service at the same rates, terms, and conditions made available to Ameritech's affiliated reseller. Discount claimed that Ameritech's actions violated R.C. 4905.10, 4905.22, 4905.32, 4905.33, 4905.35, 4905.54, and 4909.18 and certain commission orders, including the 563 Guidelines.[3]

{¶ 8} On August 3, 2005, the commission granted Ameritech's motion to dismiss Discount's complaint. The commission's dismissal was based on its determination in the 1700 Order that it would no longer consider R.C. 4905.26 complaints against wholesale cellular service providers like Ameritech. The commission explained that it had exempted wholesale providers in the 1700 Order from the regulatory requirements that formed the basis of Discount's complaint, and it advised Discount to pursue its claims of anticompetitive conduct against Ameritech at the FCC.

{¶ 9} Discount filed a timely application for rehearing. On September 28, 2005, the commission denied Discount's application, again finding that it had relinquished jurisdiction over R.C. 4905.26 complaints against wholesale cellular service providers in the 1700 Order. The commission additionally noted, for the first time, that R.C. 4905.26 "necessitates a finding by the Commission that there are reasonable grounds for the complaint, as a prerequisite to proceeding with such complaint. In this case, the Commission never made a finding that reasonable grounds existed for Discount's complaint."

{¶ 10} Advanced Cellular, Intermessage Wireless, and Wireless Outlet also filed complaints against several wholesale cellular service providers, including intervenors, Ameritech and Verizon. These complaints made allegations of discriminatory and anticompetitive conduct similar to those alleged in Discount Cellular's complaint. On October 12, 2005, the commission dismissed the complaints on the authority of the order and rehearing entry in the Discount Cellular case. On December 7, 2005, the commission denied applications for rehearing.

{¶ 11} Discount Cellular initiated the appeal in case No. 2005–2209 by filing a notice of appeal on November 22, 2005, following the rehearing entry of the commission dated September 28, 2005. On December 19, 2005, Advanced Cellu-

---

3. Discount also alleged violations of the PUCO's orders in case Nos. 84–944–TP–COI and 86–1144–TP–COI. Detailed discussion of those orders is not necessary to resolve the issues before us.

lar, Intermessage Wireless, and Wireless Outlet initiated the appeals in case Nos. 2005–2368, 2005–2369, and 2005–2370, following the commission's rehearing entry on December 7, 2005.

{¶ 12} On January 26, 2006, we granted a motion to consolidate all four appeals for briefing, oral argument, and final decision. Appellants' appeals as of right are now before this court.

## Standard of Review

{¶ 13} "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the PUCO's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id.

{¶ 14} Although we have "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 466, 469, 678 N.E.2d 922, we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 108, 110, 12 O.O.3d 115, 388 N.E.2d 1370.

## Propositions of Law No. 3 and No. 4

### *Administrative Rulemaking Procedures*

{¶ 15} In proposition of law No. 3, appellants claim that the 1700 Order cannot form the basis to dismiss its complaints because the PUCO failed to comply with the statutory rulemaking procedures set forth in R.C. 111.15. Appellants maintain that the 1700 Order is a rule and therefore that the PUCO was required to file it with the secretary of state, the Legislative Service Commission, and the Joint Committee on Agency Rule Review, as R.C. 111.15(B) requires. Appellants also argue that the 1700 Order is a rule of general application that must be codified in the Ohio Administrative Code. See R.C. 111.15(C).

{¶ 16} In proposition of law No. 4, appellants similarly maintain that the 1700 Order is invalid because the PUCO failed to comply with the procedural rule-making requirements (public notice, a hearing, filing with the executive and legislative branches, an accurate rule summary, and a fiscal analysis) outlined in R.C. Chapter 119.

{¶ 17} However, the PUCO was not required to follow the traditional administrative rulemaking process in granting the type of exemptions and alternative regulatory requirements authorized in the 1700 Order. At the time of the order, R.C. 4927.03(A)(1) provided that the PUCO, "upon its own initiative or the application of a telephone company or companies, after notice, after affording the public and any affected telephone company a period for comment, and after a hearing *if it considers one necessary,* may, by order, exempt any telephone company or companies, as to any public telecommunications service except basic local exchange service, from any provision of Chapter 4905. or 4909. of the Revised Code or any rule or order issued under those chapters, or establish alternative regulatory requirements to apply to such public telecommunications service and company or companies; provided the commission finds that any such measure is in the public interest and either * * * [t]he telephone company or companies are subject to competition with respect to such public telecommunications service [or] * * * [t]he customers of such public telecommunications service have reasonably available alternatives." (Emphasis added.) 1988 Am.Sub.H.B. No. 563, 142 Ohio Laws, Part III, 4369, 4372.

{¶ 18} Thus, the General Assembly has expressly granted the PUCO the authority to exempt, by order, telephone companies from the requirements of certain statutes, rules, and orders and from traditional regulatory requirements. Further, the PUCO can do this without a hearing. In enacting R.C. 4927.03, the General Assembly chose to require only a streamlined process. See *Stephens v. Pub. Util. Comm.,* 102 Ohio St.3d 44, 2004-Ohio-1798, 806 N.E.2d 527, ¶ 13. Had the General Assembly wanted to require the PUCO to engage in administrative rulemaking before exercising its alternative regulatory authority, it presumably would have chosen words to that effect.

{¶ 19} Nevertheless, appellants contend that the 1700 Order is a rule subject to the requirements of R.C. 111.15(B) and (C) and R.C. Chapter 119. They contend that in *New Par v. Pub. Util. Comm.,* 98 Ohio St.3d 277, 2002-Ohio-7245, 781 N.E.2d 1008, we recognized that the 563 Guidelines were a rule. Thus, according to appellants, "the fact that the 1700 Order radically changes, and even eliminates, the rules embodied in the 563 Order [i.e., the 563 Guidelines] means that the 1700 Order is automatically a 'rule.'"

{¶ 20} However, whether the 563 Guidelines are a rule or an order has no relevance to this issue. R.C. 4927.03(A)(1) specifically allows the PUCO to issue

an order exempting telephone companies from any "rule or order" issued under R.C. Chapters 4905 or 4909. In any event, we did not hold in *New Par* that the 563 Guidelines were a rule. Rather, we held that the 563 Guidelines were valid because they were issued before legislation was enacted subjecting the PUCO to the rulemaking procedures of R.C. 111.15 and R.C. Chapter 119. In other words, we merely rejected the argument that *if* the 563 Guidelines were a rule, they were adopted improperly. *New Par*, 98 Ohio St.3d 277, 2002-Ohio-7245, 781 N.E.2d 1008, at ¶ 12–13.

{¶ 21} Accordingly, we find that the PUCO properly exercised its statutory authority under R.C. 4927.03(A)(1) to deregulate any public telecommunications service except basic local exchange service "by order" when it issued the 1700 Order. R.C. 111.15 and R.C. Chapter 119 were not applicable to the 1700 proceedings. Similarly, there was no requirement that the 1700 Order be codified in the Ohio Administrative Code, because the PUCO was not engaged in rulemaking when it issued the 1700 Order. Thus, we reject propositions of law Nos. 3 and 4.

### Proposition of Law No. 2

#### *Alternative Regulation under R.C. 4927.03(A) and (D)*

{¶ 22} In proposition of law No. 2, appellants argue that the PUCO failed to comply with the notice and hearing requirements in former R.C. 4927.03(D) before issuing the 1700 Order. Appellants maintain that, pursuant to R.C. 4927.03(D), the PUCO is statutorily required to hold a hearing before it may modify an existing order or rule that grants an exemption or establishes alternative requirements. Appellants contend that the 1700 Order is invalid because it modified the 563 Guidelines without the PUCO providing proper notice and a hearing.

{¶ 23} R.C. 4927.03(D) [4] provided:

{¶ 24} "The public utilities commission has jurisdiction over every telephone company providing a public telecommunications service that has received an exemption or for which alternative regulatory requirements have been established pursuant to this section. As to any such company, the commission, after notice and hearing, may abrogate or modify any order so granting an exemption or establishing alternative requirements if it determines that the findings upon which the order was based are no longer valid and that the abrogation or modification is in the public interest. No such abrogation or modification shall be made more than eight years after the date an order granting an exemption or

---

4. The quoted language now appears in R.C. 4927.03(C), except that the statute now imposes a five-year limit.

establishing alternative requirements under this section was entered upon the commission's journal, unless the affected telephone company or companies consent."

{¶ 25} The purpose of R.C. 4927.03(D) is not to require the PUCO to hold a hearing whenever it seeks to modify an existing exemption or alternative regulation granted pursuant to R.C. 4927.03. Rather, R.C. 4927.03(D) applies only when the PUCO is attempting to revoke or diminish an exemption or alternative regulatory relief that it had previously granted to a telephone company. This construction is bolstered by the language in R.C. 4927.03(D) that "[n]o such abrogation or modification shall be made more than eight years after the date an order granting an exemption or establishing alternative requirements under this section was entered upon the commission's journal, *unless the affected telephone company or companies consent.*" (Emphasis added.) It would be pointless to require telephone companies to consent to further deregulation. Rather, the more sensible interpretation would require a company's consent only if the PUCO attempts to remove or diminish a statutory exemption or alternative regulation more than eight years after it was granted.

{¶ 26} Moreover, appellants' construction of the statute would make it more difficult to modify an already existing exemption than it would be to grant it in the first place. Appellants concede that when first issuing a statutory exemption or an alternative regulation under R.C. 4927.03(A)(1), the PUCO is not required to hold a hearing. Yet appellants argue that any additional deregulation by way of modifying an existing exemption or alternative regulation would require the PUCO to hold an evidentiary hearing. That cannot be the result that the General Assembly intended. We must presume that the General Assembly intended a "just and reasonable result" in enacting a statute. R.C. 1.47(C).

{¶ 27} The 1700 Order, for the first time, exempted telephone companies from the requirements of R.C. 4905.26, 4905.33, 4905.34, and 4905.35 and made permanent other alternative regulations established in the 563 Order. The 1700 Order did not abrogate or diminish any previously granted statutory exemptions or alternative regulatory treatment. Therefore, we conclude that R.C. 4927.03(D) was not applicable.

{¶ 28} Appellants also argue under this proposition of law that the 1700 Order is invalid because the PUCO failed to provide public notice, which they claim was required by R.C. 4927.03(A)(1). However, R.C. 4927.03(A)(1) requires only "notice," and it does not specify to whom notice should be provided, how often, or in what form. We have already recognized that R.C. 4927.03(A)(1) requires "only a streamlined 'notice and comment' process * * * [that] simply requires comments by interested parties." *Stephens,* 102 Ohio St.3d 44, 2004-Ohio-1798, 806 N.E.2d 527, at ¶ 13. If *public* notice were required, the General Assembly would

have used language to that effect, as it has done in other instances. See, e.g., R.C. 4909.18 (requiring public notice in a general-circulation newspaper in each county affected by an application containing proposals deemed potentially unjust or unreasonable), 4909.19 (requiring newspaper publication regarding an application for a rate increase), and 4905.26 (notice of hearing required in a general-circulation newspaper in the county or counties affected by a complaint).

{¶ 29} In relation to the 1700 Order, notice was disseminated to a long list of interested parties, including several telephone companies and cellular service resellers, the Ohio Telecommunication Industry Association, the Office of Consumers' Counsel, and other public representatives. Based on the foregoing, we overrule proposition of law No. 2.

Proposition of Law No. 5

*Equal Protection*

{¶ 30} Appellants argue in proposition of law No. 5 that the PUCO's decision to allow Cellnet to litigate its claims against intervenors, while preventing all other similarly situated resellers of cellular service from asserting identical claims involving the same legal rights, violated the equal protection guarantees of the United States and Ohio Constitutions.

{¶ 31} "The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 7. The Equal Protection Clauses require that all similarly situated individuals be treated in a similar manner. Id. at ¶ 6.

{¶ 32} Appellants are not a suspect class, nor do they argue that a fundamental right is implicated, entitling them to a higher level of scrutiny for purposes of equal protection analysis. See *State v. Williams* (2000), 88 Ohio St.3d 513, 530, 728 N.E.2d 342. "A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions if it bears a rational relationship to a legitimate governmental interest." *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181.

{¶ 33} Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58 and 60, 717 N.E.2d 286. Rather, the challenger bears the burden to negate every conceivable basis that might support the legislation. Id. at 58, 717 N.E.2d 286.

{¶ 34} Appellants offer little argument or authority to support their equal protection claim. The PUCO applied R.C. 4927.03(A)(1) through the 1700 Order

to exempt wholesale cellular service providers from future R.C. 4905.26 complaint proceedings. In the 1700 Order, the PUCO allowed Cellnet, whose complaint was filed before the 1700 Order was rendered, to litigate its claims against wholesale providers.

{¶ 35} However, creating a distinction between those resellers who filed complaints before the 1700 Order and those who filed after the order does not, standing alone, deny equal protection. "[D]istinctions are invalidated only where 'they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.' " *State v. Williams,* 88 Ohio St.3d at 530, 728 N.E.2d 342, quoting *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508.

{¶ 36} Appellants have not met their burden of showing that exempting wholesale providers from R.C. 4905.26 complaint proceedings after a certain date is not rationally related to a legitimate state interest. Thus, there is no basis to find that the PUCO's application of the 1700 Order violated equal protection. We therefore reject appellants' fifth proposition of law.

Proposition of Law No. 6

*Due Process*

{¶ 37} Appellants argue in proposition of law No. 6 that the PUCO violated their rights to due process under the United States and Ohio Constitutions when the commission enforced the 1700 Order against them without notice, service, or a hearing. Appellants claim that the PUCO failed to provide them with required notice of the 1700 Order and that they were never given an opportunity to be heard before their rights were extinguished by that order.

{¶ 38} Appellants are merely renewing arguments that we have already addressed in our discussion of propositions of law No. 3 and No. 4 (failure to comply with R.C. 111.15 and R.C. Chapter 119 rulemaking procedures) and proposition of law No. 2 (failure to provide public notice and hearing before issuing the 1700 Order). Moreover, we have repeatedly held that there is no constitutional right to notice and hearing in utility-related matters if no statutory right to a hearing exists. See *Consumers' Counsel v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 244, 248–249, 638 N.E.2d 550; *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 310, 513 N.E.2d 337; *Cleveland v. Pub. Util. Comm.* (1981), 67 Ohio St.2d 446, 453, 21 O.O.3d 279, 424 N.E.2d 561. R.C. 4927.03(A)(1) does not require the PUCO to hold a hearing. As appellants were not statutorily entitled to notice and a hearing in the 1700 case, we overrule proposition of law No. 6.

Proposition of Law No. 1

*Retroactive Application of 1700 Order*

{¶ 39} In proposition of law No. 1, appellants contend that the PUCO violated Ohio law by retroactively applying the 1700 Order to eliminate vested rights acquired under prior laws. Appellants argue that they had a statutory right to file a cause of action against wholesale cellular service providers that accrued prior to the 1700 Order's elimination of R.C. 4905.26 complaints.

{¶ 40} The PUCO issued the 1700 Order on December 16, 1999. In the 1700 Order, the PUCO, pursuant to R.C. 4927.03(A)(1), exempted wholesale providers from all future complaints brought under R.C. 4905.26. Appellants filed complaints in 2004 and 2005 alleging past violations of Ohio law prohibiting discriminatory and anticompetitive methods and means of providing cellular service. Appellants maintain that their causes of action accrued before the 1700 Order was issued, when the alleged unlawful conduct occurred. Appellants claim that the PUCO retroactively applied the 1700 Order to eliminate their causes of action and that this violated Section 28, Article II of the Ohio Constitution.

{¶ 41} Section 28, Article II prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154. Because R.C. 1.48 establishes a presumption that statutes are prospective in operation, we must first determine whether the General Assembly expressly intended the statute to apply retroactively. *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570, citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. Only if we find that the General Assembly intended the statute to apply retroactively do we then consider whether the statute is substantive, rendering it unconstitutionally retroactive, rather than merely remedial. *Cook* at 410–411, 700 N.E.2d 570.

{¶ 42} R.C. 4927.03 was enacted as part of Am.Sub.H.B. No. 563 and became effective on March 17, 1989. Neither the statute nor H.B. No. 563 provides that the General Assembly intended for the statute to be applied retrospectively. Thus, it is presumed that the General Assembly intended for R.C. 4927.03 to apply only to acts committed after the date the statute became effective.

{¶ 43} Normally, whether a statute is applied prospectively or retroactively in a given case is judged from its effective date. However, R.C. 4927.03 is not self-executing; it requires some action by the PUCO to give effect to the exemptions and alternative regulations available thereunder. Thus, the relevant date for determining whether R.C. 4927.03 was applied retroactively to this matter is December 16, 1999, the date when the PUCO issued the 1700 Order to eliminate

complaint cases against wholesale cellular providers by exempting those providers from the requirements of R.C. 4905.26.

{¶ 44} The PUCO and intervenors contend that the 1700 Order was not applied retroactively, because appellants' complaints were filed well after the PUCO issued the 1700 Order exempting providers from reseller complaints. We disagree.

{¶ 45} The "words 'retroactive' and 'retrospective' have been used interchangeably in the constitutional analysis for more than a century." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28, citing *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570. "Both terms describe a law that is 'made to affect acts or facts occurring, or rights accruing, before it came into force.'" *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28, quoting Black's Law Dictionary (6th Ed.1990) 1317. See, also, *U.S.X. Corp. v. Ohio Unemp. Comp. Bd. of Rev.* (1990), 70 Ohio App.3d 566, 569, 591 N.E.2d 818, citing *E. Ohio Gas Co. v. Limbach* (1986), 26 Ohio St.3d 63, 65–66, 26 OBR 54, 498 N.E.2d 453 (retroactive application of a statute usually occurs when the statute is applied to a time period preceding the effective date of the statute).

{¶ 46} Appellants' complaints center on matters that allegedly occurred before the PUCO issued the 1700 Order on December 16, 1999. Before the issuance of the 1700 Order, laws and regulations in the form of the 563 Guidelines were in effect that prohibited the complained-of conduct. The 563 Guidelines prohibited wholesale providers from engaging in anticompetitive conduct and discriminatory practices. Among other things, providers were required by the 563 Guidelines to (1) offer access to their cellular services at terms, conditions, and prices that were universally available on a nondiscriminatory basis to affiliated and nonaffiliated resellers alike, (2) keep their wholesale and retail operations separate, and (3) maintain separate accounting records between the wholesale provider and its affiliated reseller.

{¶ 47} In their complaints to the PUCO, appellants alleged that intervenors failed to comply with these and other provisions of the 563 Guidelines. Thus, at issue were the practices of the intervenors with respect to their wholesale and retail cellular operations before the PUCO issued the 1700 Order. In essence, appellants' complaints ask for a declaration of their rights against intervenors on past facts and under laws existing prior to the 1700 Order. Compare *GTE Mobilnet of Ohio v. Johnson* (C.A.6, 1997), 111 F.3d 469, 481 (discussing the Cellnet complaint case before the PUCO that raised claims essentially identical to those raised here). Therefore, we find that the PUCO applied the 1700 Order retrospectively to dismiss causes of action alleging unlawful conduct occurring prior to the effective date of that order.

{¶ 48} Language from the 1700 Order supports our determination. During its consideration of the 1700 case, the PUCO declined to dismiss a complaint filed by Cellnet, a cellular reseller like appellants, that raised essentially the same allegations as those raised in this matter. The PUCO noted: "This Finding and Order applies prospectively. The circumstances giving rise to the Cellnet complaint case pertain to the previously described paradigm in which facilities-based competition in the [commercial mobile radio service] market had not yet developed, and *the complaint covers a period of time prior to this decision.* Therefore, [the Cellnet] complaint case is still appropriate for the Commission's jurisdiction." (Emphasis added.) The PUCO additionally stated, "Any prospective amendment of the existing [563 Guidelines] will have no impact on Cellnet's ability to pursue its allegations pertaining to the violation of the Commission's rules and regulations which were previously in effect and now potentially modified as a result of the [1700 Order] proceeding."

{¶ 49} When the PUCO issued its order resolving the Cellnet complaint case, it again emphasized that the statutory exemptions and alternative regulations granted in the 1700 Order were applicable on a "going forward basis" and that because the 1700 Order was prospective in nature it did not apply to the PUCO's consideration of the Cellnet complaint case. *In the Matter of the Complaint of Westside Cellular, Inc., d.b.a. Cellnet v. New Par Cos. et al.,* case No. 93–1758–RC–CSS (Jan. 18, 2001) at 36, fn. 55. For instance, the PUCO noted that in considering the allegations raised in the Cellnet complaint, the PUCO "has simply engaged in an analysis of whether the respondents have violated the law * * * and that any determination to be issued in [Cellnet's] case is retrospective in nature." Id. at 32. The PUCO stated further that the "563 requirements relative to cellular providers remained in effect until the recent issuance of the [1700 Order] in December 1999" and that the "regulatory framework [i.e., the 563 Guidelines and 944 Order] in existence for the time frame covered by" the Cellnet complaint governed the Cellnet proceedings. Id. at 48, 80.

{¶ 50} Finally, the PUCO acknowledged in the Cellnet order that it was not prohibiting all future complaint cases alleging unlawful conduct by cellular wholesale providers. Id. at 93. Similarly, in a brief before the United States Supreme Court in the Cellnet appeal, the PUCO recognized the possibility that a "similar complaint" might be brought raising the same allegations of misconduct occurring before the 1700 Order that formed the basis of Cellnet's complaint. PUCO brief opposing petition for writ of certiorari in *Cincinnati SMSA Ltd. Partnership v. Pub. Util. Comm. of Ohio,* case No. 02–1711, certiorari denied (2003), 540 U.S. 938, 124 S.Ct. 78, 157 L.Ed.2d 250.

{¶ 51} In sum, by applying the 1700 Order to dismiss appellants' complaints, the PUCO altered the legal significance of the intervenors' past conduct. See *E.*

*Ohio Gas,* 26 Ohio St.3d 63, 26 OBR 54, 498 N.E.2d 453. The PUCO, as a creature of statute, has no authority to act beyond its statutory powers. See *Reading v. Pub. Util. Comm.,* 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 13. The General Assembly did not expressly state that R.C. 4927.03 was to be applied retrospectively. Therefore, we hold that the PUCO exceeded its statutory authority when it retroactively applied R.C. 4927.03 in this matter. Accordingly, appellants' first proposition of law is well taken.

Proposition of Law No. 7

*Alternative Grounds for Dismissal*

{¶ 52} In their seventh proposition of law, appellants contend that the PUCO erred when it dismissed their complaints for failure to state reasonable grounds as R.C. 4905.26 requires. The following facts are pertinent to appellants' claim.

{¶ 53} On August 3, 2005, the PUCO dismissed Discount Cellular's complaint based in part on findings in the 1700 Order that the development of competition in the cellular market made it unnecessary to further subject wholesale providers to R.C. 4905.26 complaint proceedings. In denying Discount's rehearing application, the PUCO cited, for the first time, an additional basis for dismissing Discount's complaint. The PUCO noted that "Section 4905.26, Revised Code, necessitates a finding by the Commission that there are reasonable grounds for the complaint, as a prerequisite to proceeding with such complaint. In this case, the Commission never made a finding that reasonable grounds existed for Discount's complaint." The PUCO further stated that, pursuant to R.C. 4905.26, "the Commission must find reasonable grounds for the complaint prior to taking jurisdiction and, as we have previously stated, no such finding was made in this case. Furthermore, absent a finding of reasonable grounds there is no right to a hearing before the Commission."

{¶ 54} On October 12, 2005, the PUCO dismissed the complaints filed by Advanced Cellular, Intermessage Wireless, and Wireless Outlet on the authority of the final order and rehearing entry in the Discount Cellular case. In denying applications for rehearing in these cases, the PUCO explicitly stated, for the first time, that "reasonable grounds do not exist to support further consideration of these complaints. This is especially true, given the age and outdated nature of the allegations * * *. Further, the intervening deregulation of [commercial mobile radio service] in Ohio shows the lack of any regulatory value or consumer relevance in adjudicating such stale claims. Thus, although there is not an explicit statute of limitations applicable to complaints under Section 4905.26, Revised Code, the statutory reasonable grounds limitation enables the commission to apply reasonable limitations to dismiss such outdated claims to the extent that statute has any applicability here."

{¶ 55} Appellants maintain that the PUCO failed to apply the proper standard for deciding a motion to dismiss and also made incorrect factual findings that were contrary to the allegations stated in the complaint. According to appellants, the PUCO abused its discretion by failing to take all allegations of the complaint as true and to construe all inferences in their favor.

{¶ 56} Appellants, however, have waived this issue by not setting forth these specific grounds in any of their applications for rehearing. R.C. 4903.10(B) provides that an application for rehearing "shall be in writing and shall set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful. No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in the application." We have held that setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review. *Consumers' Counsel v. Pub. Util. Comm.*, 70 Ohio St.3d at 247, 638 N.E.2d 550 (citing cases).

{¶ 57} Appellants maintain that they have preserved all "reasonable grounds" claims in the seventh assignment of error in each of their applications for rehearing. Appellants' seventh assignment of error stated, "The commission erred in dismissing the complaint because the commission is required by R.C. 4905.26 to hear complaints alleging violations of Ohio utility law."

{¶ 58} Contrary to appellants' assertion, the seventh assignment of error on rehearing did not preserve the issues raised in the seventh proposition of law. In the seventh assignment of error, appellants state conclusively that the PUCO is required to hold a hearing under R.C. 4905.26 whenever the complaint alleges a violation of Ohio utility law. Yet appellants make no mention of the specific issues set forth in the seventh proposition of law. Nowhere in this assignment of error on rehearing do the appellants claim that the PUCO applied the wrong legal standard when reviewing a motion to dismiss. Nor have appellants specifically alleged that the PUCO made incorrect factual findings when it found that appellants' complaints failed to set forth reasonable grounds.

{¶ 59} We have held that when an appellant's grounds for rehearing fail to specifically allege in what respect the PUCO's order was unreasonable or unlawful, the requirements of R.C. 4903.10 have not been met. *Marion v. Pub. Util. Comm.* (1954), 161 Ohio St. 276, 278–279, 53 O.O. 148, 119 N.E.2d 67; *Cincinnati v. Pub. Util. Comm.* (1949), 151 Ohio St. 353, 378, 39 O.O. 188, 86 N.E.2d 10, and paragraph 17 of the syllabus; *Conneaut Tel. Co. v. Pub. Util. Comm.* (1967), 10 Ohio St.2d 269, 270, 39 O.O.2d 432, 227 N.E.2d 409. Further, we have strictly construed the specificity test set forth in R.C. 4903.10. *Consumers' Counsel v. Pub. Util. Comm.*, 70 Ohio St.3d at 248, 638 N.E.2d 550. By using the language set forth in R.C. 4903.10, " 'the General Assembly indicated clearly its intention to deny the right to raise a question on appeal where the appellant's

application for rehearing used a shotgun instead of a rifle to hit that question.' " Id., quoting *Cincinnati v. Pub. Util. Comm.*, 151 Ohio St. at 378, 39 O.O. 188, 86 N.E.2d 10.

{¶ 60} Here, appellants' grounds for rehearing allege nothing more than broad, general claims, and they failed to set forth specifically the same errors alleged in their seventh proposition of law. Thus, we hold that appellants have failed to preserve these issues.

{¶ 61} Appellants also complain under the seventh proposition of law that the PUCO "invent[ed]" its erroneous reasonable-grounds rationale for the first time in its rehearing order in the Discount Cellular case instead of in the order granting the motion to dismiss.[5] R.C. 4903.10 provides:

{¶ 62} "Where such application for rehearing has been filed, the commission may grant and hold such rehearing on the matter specified in such application, if in its judgment sufficient reason therefor is made to appear. * * *

{¶ 63} " * * *

{¶ 64} "If, after such rehearing, the commission is of the opinion that the original order or any part thereof is in any respect unjust or unwarranted, or should be changed, the commission may abrogate or modify the same; otherwise such order shall be affirmed. An order made after such rehearing, abrogating or modifying the original order, shall have the same effect as an original order * * *."

{¶ 65} R.C. 4903.10 appears to permit the PUCO to modify an order only after granting an application for rehearing. Here, the PUCO denied Discount Cellular's application for rehearing. As a result, the PUCO acted beyond its statutory authority when it cited in its rehearing order an additional reason for dismissing Discount's complaint.

{¶ 66} However, Discount also failed to preserve this issue in an application for rehearing. R.C. 4903.10 provides that "[a]fter *any* order has been made by the public utilities commission, any party * * * in the proceeding may apply for a rehearing in respect to any matters determined in the proceeding." (Emphasis added.) See *Senior Citizens Coalition v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 329, 333, 533 N.E.2d 353 (R.C. 4903.10 is jurisdictional, permits an application for rehearing after any order, and requires an application for rehearing to preserve the right to appeal an issue). Discount did not file a second application for rehearing challenging the PUCO's additional grounds for dismissal. Moreover, Discount did not set forth this specific claimed error in its notice of appeal to this

---

5. The PUCO incorporated the Discount rehearing entry into the order dismissing the other three complaints. As a result, only the order dismissing Discount's complaint failed to rely on reasonable grounds as a basis for dismissal.

court, and the failure to set forth alleged errors in the notice of appeal delimits the issues for our consideration. R.C. 4903.13; *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, at ¶ 21. Thus, Discount has lost the right to question the unlawfulness of the PUCO's orders.

{¶ 67} For the foregoing reasons, we reject appellants' seventh proposition of law.

### Conclusion

{¶ 68} For the reasons explained above, we hold that appellants' propositions of law No. 2 (R.C. 4927.03 procedural requirements), No. 3 (R.C. 111.15 rulemaking procedures), No. 4 (R.C. Chapter 119 rulemaking procedures), No. 5 (equal protection), and No. 6 (due process) are without merit. We hold that proposition of law No. 1 (impermissible retroactive application of 1700 Order) is well taken. However, the PUCO set forth an alternative ground for dismissal. Although appellants challenge the alternative ground for dismissal, they failed to properly preserve this issue on rehearing (proposition No. 7). Accordingly, we affirm the PUCO's orders.

*Orders affirmed.*

MOYER, C.J., KLATT, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

WILLIAM A. KLATT, J., of the Tenth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

Randy J. Hart, Mark Griffin, and Carla Tricarichi, for appellants.

Marc Dann, Attorney General, Duane Luckey, Senior Deputy Attorney General, and Thomas W. McNamee, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.

Porter, Wright, Morris & Arthur, Kathleen M. Trafford, and Hugh E. McKay; Kirkland & Ellis, L.L.P., Stephen R. Patton, and Robert R. Gasaway, for intervening appellee Verizon Wireless.

Calfee, Halter & Griswold, L.L.P., Mark I. Wallach, James F. Lang, and Michael T. Mulcahy, for intervening appellees Ameritech Mobile Communications, L.L.C., and Cincinnati SMSA Limited Partnership.